## Appeal of JOHNSTOWN DEMOCRAT CO., INC.

Docket No. 1647.   Submitted March 26, 1925. . Decided June 18, 1925.

On evidence the taxpayer is entitled to include the value of good will in the amount of $37,500 in its computation of invested capital for income and profits-tax purposes for the years 1919 and 1920.

*Barry Mohun*, Esq., for the taxpayer.
*E. C. Lake*, Esq., for the Commissioner.

Before GRAUPNER, LANSDON, and LITTLETON.

This appeal involves asserted deficiencies in income and profits taxes for 1919 and 1920, in the respective amounts of $2,347.25 and $526.85. From the allegations of the petition admitted by the Commissioner and the oral and documentary evidence adduced at the hearing, the Board makes the following

### FINDINGS OF FACT.

1. The taxpayer is a Pennsylvania corporation, organized May 27, 1914. Its principal place of business is at Johnstown, Pa., where it is engaged in the business of publishing the Johnstown Democrat, a morning daily newspaper.

2. The authorized capital stock of the taxpayer at the date of incorporation was of the par value of $150,000, and was all issued

to W. W. Bailey as consideration for all the assets, made up of real estate, buildings, plant, equipment, and the value as a going concern of the publishing business theretofore conducted by Bailey as an individual under the name of the "Johnstown Democrat." The value of the tangible assets received for stock, less liabilities at the date of transfer, was $51,331.36. The difference between the par value of the stock issued ($150,000) and the net value of the tangible assets ($51,331.36), or $98,668.64, was set up on the books of the taxpayer as a "franchise account" and represented going value or good will made up of an Associated Press franchise, advertising contracts, subscriptions, circulation, and the trade name of the Johnstown Democrat. The proffer to sell the assets of the predecessor business accepted by the taxpayer contained the following:

The whole, being a going concern, all of said plant and property being free and unincumbered, for $150,000 of the capital stock of your company.

3. The Johnstown Democrat was established in 1863 or 1864, and was published continuously as a weekly newspaper thereafter until 1888, when it became a daily morning newspaper and as such was continuously issued to and through the years involved in this appeal. In 1893 the daily newspaper, plant, equipment, and other assets, were acquired by W. W. Bailey, who subsequently formed a partnership with his brother, E. H. Bailey, in the printing and publishing business, which included the publication of the Johnstown Democrat. E. H. Bailey owned a one-third interest in the partnership so formed, and the remaining two-thirds interest was the property of W. W. Bailey.

4. The partnership between W. W. Bailey and E. H. Bailey was terminated by the death of E. H. Bailey in 1912. Thereafter, W. W. Bailey acquired the one-third interest in the partnership from the estate of E. H. Bailey for a consideration of $50,000. The value of the interest so acquired was determined by an appraisal by the Orphans Court of Cambria County, Pa., which had jurisdiction over the estate of the deceased partner.

5. The Johnstown Democrat is the only morning newspaper published in Johnstown, Pa. It derives its income from advertisers and circulation from a business community or trade territory that has a population of about 250,000 inhabitants. It is the only newspaper in Johnstown that has ever had an Associated Press franchise. The average daily circulation, annual Associated Press expense, and annual net earnings from 1904 to 1918, inclusive, were:

| Year | Average circulation per day | Expense Associated Press | Net earnings | Year | Average circulation per day | Expense Associated Press | Net earnings |
|---|---|---|---|---|---|---|---|
| 1904 | 7,087 | $2,672.00 | $6,481.46 | 1912 | 12,039 | $2,963.08 | $10,672.14 |
| 1905 | 7,394 | 2,766.01 | 9,495.04 | 1913 | 14,528 | 3,090.56 | 2,788.52 |
| 1906 | 8,368 | 2,738.34 | 7,326.30 | 1914 | 14,970 | 3,089.92 | 13,503.79 |
| 1907 | 8,783 | 2,855.92 | 7,872.12 | 1915 | 14,334 | 3,176.53 | 11,127.82 |
| 1908 | 8,626 | 2,882.20 | 9,316.63 | 1916 | 14,398 | 3,166.37 | 17,978.25 |
| 1909 | 9,666 | 2,913.25 | 8,959.21 | 1917 | 11,628 | 3,259.85 | 20,472.50 |
| 1910 | 10,768 | 2,913.78 | 15,210.21 | 1918 | 11,108 | 3,563.25 | 7,448.25 |
| 1911 | 10,290 | 2,873.75 | 12,039.18 | | | | |

6. The total par value of the capital stock of the taxpayer outstanding on March 3, 1917, was $150,000.

7. In its income and profits tax returns for 1919 and 1920 the taxpayer included the amount of $98,668.64 in the computation of its invested capital as the value of its good will for each of the two years in question in this appeal. A field agent of the Income Tax Unit reduced the good-will value so included to $37,500. Subsequently the Commissioner, upon an office audit, excluded the entire amount of $98,668.64, carried by the taxpayer as good will on its books of account, from invested capital for each of the years 1919 and 1920. From such disallowance, together with other minor adjustments, the Commissioner determined additional tax liability of the taxpayer in the amounts of $2,347.25 for 1919 and $526.85 for 1920, and so notified the taxpayer in a letter mailed November 24, 1924. On January 23, 1925, the taxpayer made this appeal as provided by law.

## DECISION.

The deficiency, if any, should be recomputed in conformity with the following opinion. Final settlement will be determined on agreement or on 10 days' notice, in accordance with Rule 50.

## OPINION.

LANSDON: The only issue involved in this appeal is whether good will of the taxpayer, carried on its books of account in the amount of $98,668.64, had such a value or any value during the years in question. The Commissioner has excluded good will in any amount from his computation of the taxpayer's invested capital, alleging that no value of such good will has been proved by the taxpayer either at the date of incorporation or at any subsequent time.

In support of its contention that its good will had value at the date of the stock issue therefor and at all times thereafter, the taxpayer offered evidence at the hearing that is convincing to the Board.

It is in evidence that the original proffer to sell the assets of the predecessor business to the taxpayer specially included "going

value " as a part of the property offered. The taxpayer has proved that a one-third interest in the assets taken by it in exchange for stock had just previously been sold for a consideration of $50,000 on a valuation determined by an appraisal by the Orphans Court of Cambria County, Pa. The facts set forth in paragraph 5 of the findings of fact herein show an earning capacity of the taxpayer sufficient to establish good-will value of at least $47,617.06.

The Associated Press franchise acquired by the taxpayer from the predecessor business and owned and used by it for business purposes from that time certainly has a substantial money value. The president of the taxpayer testified that he considers such franchise worth at least $50,000, and that he would not sell it for $100,000. The trade name and circulation of the newspaper published by the taxpayer have considerable value.

In the light of all the evidence, the Board is of the opinion that the taxpayer is entitled to have the value of good will in the amount of $37,500, the maximum permitted by the statute, included in the computation of its invested capital for each of the years 1919 and 1920, for the purpose of determining its liability for income and profits taxes for such years.